IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

RICHARD L. BRANDON         )
                                 )    Case No: 4:09-CV-35
v.                             )    MATTICE/CARTER
                                 )
MICHAEL J. ASTRUE,          )
     Commissioner of Social Security    )

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and

Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.  This matter was

referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules

of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's

Motion for Summary Judgment (Doc. 9), defendant's Motion for Summary Judgment (Doc. 12)

and Plaintiff's Reply (Doc. 14).

For the reasons stated herein I RECOMMEND the Commissioner's decision be

REVERSED and REMANDED under Sentence Four of 42 U.S.C. § 405(g) for further

proceedings consistent with this Report and Recommendation.

## Plaintiff's Age, Education, and Past Work Experience

Plaintiff was born on July 4, 1970  (Tr. 35).  He was 36 years old, "a younger individual,"

when he first applied for benefits and age 38 on the date of the ALJ's decision.  *See* 20 C.F.R.

§404.1563. Plaintiff completed the 12th grade in 1989 with no additional special job training,

trade or vocational school (Tr. 84). His past relevant work for the previous 15 years consisted of truck driver for construction companies and county highway departments, performing these jobs from 1982-2007 (Tr. 80). Plaintiff has not worked since March 5, 2007, at which time he was involved in a severe dump truck accident suffering multiple facial fractures and trauma to the head (Tr. 79). At the time of the accident, Plaintiff was driving a dump truck that was sideswiped by a car, causing his truck to run off the road. He was thrown out of the truck, and the truck landed on top of him (Tr. 211). As a result of the accident, Plaintiff asserts he suffered head trauma with multiple facial bone fractures and underwent the implantation of nine plates and fifty-two screws in his face (Tr. 102). Plaintiff alleged in his disability report that he suffers from short term memory difficulties with back and neck pain, impaired visibility, and hearing loss in the left ear (Tr. 104, 108).

### Applications for Benefits

Plaintiff applied for disability insurance benefits and supplemental security income on March 27, 2007, alleging disability as of March 5, 2007 (Tr. 12, 35). The Social Security Administration (SSA) denied Plaintiff's claims initially and upon reconsideration (Tr. 33, 35). On June 5, 2008, Administrative Law Judge (ALJ) Ronald Feibus held a hearing at which Plaintiff, who was represented by counsel, testified (Tr. 218-45). The ALJ issued his decision on October 30, 2008, finding Plaintiff had the residual functional capacity to perform a full range of sedentary work and pursuant to the Medical-Vocational Guidelines was not disabled or entitled to benefits (Tr. 12-20). The ALJ's decision became final and appealable when the Appeals Council denied Plaintiff's request for review (Tr. 4-6). *See* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff filed the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## **<u>Standard of Review - Findings of the ALJ</u>**

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability.  *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).  Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience.  *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed.  *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.  The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted). The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs*., 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009 (Exhibit D).

2. The claimant has not engaged in substantial gainful activity since March 5, 2007, the alleged onset date (Exhibit D; 20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mechanical low back pain, intermittent joint arthralgia and a history of a motor vehicle accident on March 5, 2007 with head trauma (Exhibit 2F; Exhibit 6F; 20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform at least the full range of sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant is unable to perform his past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on xxxx, x, 1970 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (Exhibit D; 20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 5, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-19).

## Issues Presented

Plaintiff raises the following issues:

1) Whether the Commissioner erred as a matter of law by failing to develop the record regarding the Plaintiff's possible mental impairment.

2) Whether the Commissioner erred as a matter of law by failing to evaluate the Plaintiff's mental impairments and resulting functional limitations as required by 20 C.F.R. § 404.1520A.

3) Whether the Commissioner erred as a matter of law by substituting its own medical findings for those readily found in the medical record and as a result the ALJ's findings failed to accurately reflect the Plaintiff's abilities; accordingly, the Commissioner's decision denying benefits was not based on substantial evidence.

4) Whether the Commissioner erred as a matter of law by mechanically relying on the Medical-Vocational Guidelines and in failing to obtain vocational expert testimony in violation of step five of the sequential evaluation process. 20 C.F.R. § 404.1520.

In the first two issues, Plaintiff argues the ALJ failed to adequately develop the record and properly assess his mental impairment. In the third and fourth issues he objects to the ALJ's determination that Plaintiff could perform a full range of sedentary work.

For reasons that follow, I conclude substantial evidence does support the ALJ's findings insofar as they relate to development of the record and assessment of Plaintiff's mental impairment but remand is required to provide testimony from a VE to address Plaintiff's non-exertional limitations, which I conclude were clearly supported by the record.

**Relevant Facts**

**A.**     **Medical Evidence**

Plaintiff stopped working as a truck driver on March 5, 2007, when he was involved in a dump truck accident (Tr. 78-80). He was treated for his injuries at Vanderbilt University Medical Center and underwent surgery for his facial injuries and a retinal tear in his right eye (Tr. 146-47). CT scans of Plaintiff's head and cervical spine revealed no evidence of acute intracranial or cervical spine injury (Tr. 152-53). CT scans of the chest, abdomen, and pelvis were negative (Tr. 151-52).

Plaintiff's wounds healed well. Dr. George Lawson, one of Plaintiff's treating physicians at Vanderbilt, determined that since having surgery Plaintiff had "done well" and determined that within 48 hours of having surgery he was ready for discharge (Tr. 142). On March 23, 2007 – 16 days after surgery – Plaintiff reported he felt "very well overall" and was having much less pain (Tr. 138). A week later he reported he was doing much better and no longer had scalp soreness (Tr. 137). Treatment notes from March, April, and June showed continued good progress (Tr. 129, 132, 137-38).

State Agency Physicians, after a review of Plaintiff's medical records, confirmed Plaintiff's good prognosis. Dr. Marvin H. Cohn on May 7, 2007 indicated that while Plaintiff's impairments were severe, they would improve to non-severe by March 5, 2008 (Tr. 125, 128).

Dr. Denise Bell on August 25, 2007 noted Plaintiff had been healing well and reached the same conclusion (Tr. 160-63).

The record contains no other medical evidence from 2007 or the first four months of 2008. On May 20, 2008, Plaintiff underwent a functional capacity examination performed by Kasey Cartwright, a physical therapist, for purposes of a "disability evaluation" (Tr. 165). Ms. Cartwright found significant limitations in Plaintiff's functional capacity. She determined Plaintiff had 67.5 pounds of grip strength in his left hand, and he had none at all in his right. He could only lift/carry a maximum of five pounds occasionally with his left hand and no weight with his right (Tr. 169, 171). Ms. Cartwright further found Plaintiff was not capable of fine motor manipulation in his left hand but his right hand was within normal limits (Tr. 170). She determined Plaintiff could sit, stand, and walk for less than one hour at a time, and walk less than three minutes continuously (Tr. 170-71). According to her evaluation, Plaintiff could sit for only two to three hours in an eight-hour day, but not consecutively; he could stand and walk for less than one hour in an eight-hour day (Tr. 171). Ms. Cartwright found Plaintiff could bend occasionally but never kneel, crawl, climb, or reach over his shoulder (Tr. 172). Her report indicated Plaintiff could not complete the cardiovascular portion of the assessment due to "gait dysfunction," pain, and increased heart rate (Tr. 168).

Dr. Frank Jayakody saw Plaintiff on May 13, 2008, "for a physical examination for disability determination" (Tr. 173). The record contains only one document from Dr. Jayakody, a one page letter in which he summarized Plaintiff's complaints and the examination (Tr. 173). However, Dr. Jayakody attached and considered the functional capacity evaluation in reaching his conclusion. Plaintiff complained of "persistant [sic] back pain, inability to turn his head to a

side, inability to see out of the right eye and inability to hear our [sic] of the left ear" (Tr. 173).

Plaintiff further complained of pain in the knee, ankle joints, right forearm, and wrist; he could

not grip with his right hand (Tr. 173). Dr. Jayakody indicated that his examination was

consistent with Plaintiff's complaints (Tr. 173). He noted tenderness over Plaintiff's cervical

and lumbar spine as well as on the lateral side of Plaintiff's left foot and ankle (Tr.173). Dr.

Jayakody reported Plaintiff had difficulty rotating his head, particularly to the right, and had

difficulty in ambulation (Tr. 173). He indicated Plaintiff had weakness in his right hand with

poor grip strength and was unable to straighten his right elbow or raise his arm over 60 degrees

(Tr. 173). Dr. Jayakody could not perform a complete neurological evaluation because of

Plaintiff's "inability to complete some tasks" (Tr. 173). Although he noted that Plaintiff's

"memory seems to be poor," he did not perform a formal mental assessment (Tr. 173). He

opined Plaintiff was "not capable of functioning in any capacity to be employed" (Tr. 173).

**B.**      **Testimony of the Vocational Expert**

ALJ Feibus presided over the administrative hearing on June 5, 2008. The ALJ began the

hearing by noting the incompleteness of the record. The ALJ concluded the medical records

documenting the injuries and treatment from Plaintiff's motor vehicle accident did not address

the issues raised by Dr. Jayakody or the functional capacity evaluation (Tr. 221). The ALJ

observed that Plaintiff's complaints and the functional capacity evaluation were at odds with the

Vanderbilt records, which indicated that Plaintiff was neurologically intact and that his cervical

and lumbar spines "were adequately assessed" (Tr. 222). The ALJ explained to Plaintiff and his

attorney that the Vanderbilt records made no mention of Plaintiff's arm, leg, back, and neck

complaints, and without medical documentation corroborating them, he must conclude Plaintiff

did not fully cooperate with the functional capacity evaluation (Tr. 223-26).  In response to the

ALJ's concerns, Plaintiff's attorney explained that the case had been expedited on account of

"dire need" (Tr. 222).  Because of the limited medical record evidence, the ALJ ordered a

consultative examination be performed by an orthopedist (Tr. 227-28).

## C.       Testimony of Plaintiff

Plaintiff testified he tended to his own personal care except when his joints "flare up"

(Tr. 229-30).  He explained he had once been bed-ridden for five weeks on account of such a

flare up (Tr. 230).  While he had not been tested for rheumatoid arthritis, Plaintiff testified that

he had been treated for arthritis prior to his accident, and that his swelling worsened after the

accident (Tr. 230-31).  Plaintiff explained he had trouble completing the functional capacity

evaluation because it was administered to him shortly after he had been bedridden from a flare

up (Tr. 231-32).  Plaintiff conceded that he did not have "a whole lot of trouble" in his neck but

did in his back (Tr. 234).  Plaintiff told the ALJ he was not swollen the day of the hearing and he

could move his arm freely. He could not straighten his right elbow. It would swell and "draw his

fingers." (Tr. 233).  He claimed to have seen a doctor for his swelling in 2000, and the ALJ

suggested that his attorney obtain those medical records (Tr. 240).[1]  Plaintiff testified he still had

floaters on his eye and hearing loss in his left ear, but he testified to no other injuries arising

from his accident (Tr. 237).  The ALJ concluded the hearing by listing tests he wanted the

consultative examination to include and by asking Plaintiff if there were any issues the ALJ had

missed (Tr. 241, 244).  Plaintiff indicated there was not (Tr. 244).

---

[1]Apparently Plaintiff never procured these medical records, as they are not found in the
record.

**D.     Post-Hearing Evidence**

On July 24, 2008, Dr. C. Douglas Wilburn performed a consultative examination at the request of the Commissioner.  Plaintiff described a six-year history of pain and swelling in both ankles and told the doctor that his main complaint now was knee and ankle swelling, as well as some intermittent swelling of the right wrist (Tr.177).  Plaintiff also complained of some intermittent back pain without any significant radiation, stiffness in his right elbow, and weakness in his legs and upper extremity (Tr. 177-78).  On examination, Dr. Wilburn reported Plaintiff had diffuse weakness about the entire right arm, especially with grip strength (Tr. 178).  He noted Plaintiff walked with a "somewhat slow wide based from broad based gait" which Dr. Wilburn "felt to be abnormal," and also noted Plaintiff was "a little bit slow with mentation and a little bit slow with giving the history and physical" (Tr. 178).  The doctor reported the straight leg raise test caused Plaintiff some low back pain but no "true" radicular pain.(Tr. 178).

Aside from these abnormalities, Dr. Wilburn also noted Plaintiff was recovering well from his face and eye surgery; stood erect and had a straight spine; and had a full range of motion bilaterally in his upper extremities, including his right hand, wrist, and fingers (Tr. 178).  Dr. Wilburn found the strength of Plaintiff's lower extremities to be "grossly intact" with a good range of motion, and that Plaintiff's report of weakness in his lower extremities could not be objectively documented (Tr. 178-79).  Dr. Wilburn did not observe any swelling or inflammation around Plaintiff's knees or ankles, and did not note "any real" inflammation of his fingers or wrist.  Plaintiff seemed to have a diffuse weakness about the entire right arm especially with grip strength (Tr. 178).  Dr. Wilburn reported that he did not observe any "objective inflammation" on the day of the exam (Tr. 179).  An X-ray of Plaintiff's lumbar spine and pelvis indicated very

minimal scoliosis and only "a little" degenerative disc disease at the L5-S1 vertebrae (Tr. 178).

An X-ray of Plaintiff's right elbow was normal (Tr. 178). Dr. Wilburn suspected Plaintiff had an inflammatory joint disease such as arthritis and an unknown brain trauma and noted objective weakness of the right arm. He felt Plaintiff had significant restrictions with his inflammatory joint disease and residual from his unknown brain trauma. Dr. Wilburn opined Plaintiff would be restricted to a job that is predominantly sitting with very limited standing or walking with limited bending and stooping and no climbing whatsoever, no repetitive lifting, bending, twisting or stooping and an occasional lifting restriction of 20-25 pounds (Tr. 179).

Dr. Wilburn also submitted a Medical Source Statement of Ability to Do Work-Related Activities (Tr. 185-90). The doctor determined that Plaintiff could lift and carry up to 20 pounds occasionally but should never reach overhead with his right hand, and only occasionally with his left (Tr. 185, 187). The doctor indicated that Plaintiff could perform all other uses of the hands – non-overhead reaching, handling, fingering, feeling, pushing/pulling – occasionally, up to 1/3 of a day, and could also operate foot controls with both feet occasionally, up to 1/3 of a day (Tr. 187). He determined that Plaintiff could sit for two hours at a time and for up to six hours in an eight-hour day, stand/walk for one hour at a time and up to two hours in an eight-hour day, and can occasionally stoop, kneel, crouch, and crawl (Tr. 186, 188).

### ALJ Decision

The ALJ determined Plaintiff had not engaged in substantial gainful activity since the day of his accident and did have severe impairments, but that none of those impairments – singly or in combination – met or medically equaled a listing (Tr. 14-16). The ALJ further determined

Plaintiff's impairments limited him to a full range of sedentary work (Tr. 17-18). Applying the Medical-Vocational Guidelines, the ALJ found Plaintiff was not disabled (Tr. 19).

## Analysis

As stated above, the first two issues relate to whether the ALJ failed to adequately develop the record as to Plaintiff's alleged possible mental impairment. The third and fourth issues relate to whether the ALJ's finding that he can perform a full range of sedentary work is supported by the evidence of record and whether the ALJ can rely on the Medical-Vocational Guidelines ("grids") in light of the non-exertional restrictions found in the record. First, I will consider the first two issues.

### The Possible Mental Impairment

In the hearing the ALJ noted the lack of medical record evidence supporting Plaintiff's claims (Tr. 221-26). The ALJ suggested the discrepancy between Plaintiff's medical treatment records and Plaintiff's performance on the functional capacity evaluation suggested Plaintiff had not fully cooperated with the assessments (Tr. 225-27). The ALJ ordered a consultative examination to be performed by an orthopedist (Tr. 227-28). The ALJ went so far as to specify tests he wanted the examination to include (Tr. 241).

Plaintiff argues the ALJ failed to adequately develop the record, particularly in regard to Plaintiff's "possible" mental impairment (*See* Plaintiff's Brief at 9-13). Plaintiff cites a number of cases from other jurisdictions, the majority of them involving *pro se* claimants. Plaintiff argues that the burden to explore possible impairments resulting from head trauma fell on the ALJ. Plaintiff correctly states that Social Security adjudications are non-adversarial proceedings

in which the ALJ has duties not accorded judges in traditional judicial proceedings. However, I agree with the Commissioner in concluding the ALJ fulfilled those duties under the facts of this case. The ALJ reviewed the medical records Plaintiff submitted, explained that they did not support Plaintiff's allegations, and ordered a consultative examination to address Plaintiff's claims. But the ALJ had no obligation to do the same regarding any mental impairment on the basis of the record before him. Neither Plaintiff nor his attorney raised the prospect of any such impairment at the hearing and the records Plaintiff submitted gave the ALJ no serious indication that Plaintiff was functionally limited due to a mental impairment beyond the passing reference of Dr. Jayakody that his memory seemed poor (Tr. 173) and the references to poor mentation by Dr. Wilburn and his suspicion of undiagnosed head trauma (Tr. 178-79). Further, as set out below, there is evidence from the Vanderbilt medical records showing no acute intracranial injury (Tr. 152).

Although the ALJ has some duty to ensure the record is developed, the burden of proof for establishing the existence of a severe impairment remains the claimant's. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Secretary of Health & Human Srvs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). The Sixth Circuit has held that the ALJ has a heightened duty to develop the record when a claimant is *pro se*. *See Rowden v. Chater*, 1996 WL 294464, *1 (6th Cir. 1996) (citing *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). But this heightened duty does not exist here, where a claimant is represented by counsel. In fact, the Sixth Circuit will not even impose

this heightened duty if a claimant is *pro se* so long as the court is satisfied the claimant demonstrated a good grasp of the proceedings and adequately presented a case. *See Wilson v. Commissioner of Social Security*, 2008 WL 2224834, **3 (6th Cir. 2008). When, as here, there is no heightened duty, a plaintiff should at least identify the claims at issue before any duty to develop the record can be imputed to the ALJ. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

During the administrative hearing, Plaintiff never testified to any head trauma, memory loss, or other cognitive deficit, and the ALJ offered him an opportunity to raise any issue he or the ALJ had not covered (Tr. 244). Even though in a September 14, 2000 Disability Report there is a reference to short term memory limitations, it was not raised in the hearing (Tr. 104). Plaintiff's counsel did not raise the issue, either by examining Plaintiff, proffering another witness, or introducing new documentary evidence. Consistent with the Tenth Circuit holding in *Hawkins*, the Sixth Circuit has refused to remand a case for further development of a possible mental impairment where Plaintiff failed to raise the issue. *See Ferrari v. Commissioner of Social Security*, 1996 WL 549782 (6th Cir. 1996). I agree with the Commissioner in concluding remand is not appropriate as to issues not raised by Plaintiff.

Plaintiff argues the ALJ should have done more to develop the record because the ALJ was on notice that Plaintiff may have suffered some sort of mental deficit from Plaintiff's disclosure on the disability report referring to poor short term memory and from Dr. Jayakody's notation that his memory "seems to be poor." *See id.* at 12-13. Plaintiff appears to argue these documents were enough to place on the ALJ a duty to order a consultative examination.

However, the Sixth Circuit has explained the governing regulations do not require an ALJ to refer a claimant to a consultative specialist, but merely grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. *See Landsaw*, 803 F.2d at 214. This is true even if a claimant alleges a mental impairment. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990). Under Sixth Circuit precedent the ALJ need not exercise this authority "unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original). As the Commissioner argues, the bare statements Plaintiff cites do not meet this rigorous standard. They do not suggest any diagnosed disease or disorder. Dr. Jayakody mentioned Plaintiff's poor memory in only one line and did not indicate any certainty in his observation. The record contains no mental assessment. Furthermore, the Vanderbilt medical records indicate Plaintiff did not sustain any significant brain injury. The March 5, 2007 treatment note from Vanderbilt University Medical Center indicates, "no evidence of acute intracranial or cervical spine injury" (Tr. 152).

Plaintiff also argues that the ALJ had a duty to further explore and evaluate Plaintiff's mental impairments after receipt of Dr. Wilburn's report, which mentioned Plaintiff's "poor mentation" and raised the possibility of an undiagnosed brain injury. *See* Plaintiff's Brief at 11-12. Although I think the issue is close, in light of the evidence from the Vanderbilt Medical Center record I conclude even adding those passing references to poor memory is not sufficient to trigger the duty Plaintiff attempts to impose. Dr. Wilburn did not explain what he meant by "poor mentation" and did not specify it's degree. The ALJ could discount this assessment in

light of Plaintiff's clear ability to answer the ALJ's questions at the hearing and the Vanderbilt medical records. I conclude Dr. Wilburn's suggestion of possible head trauma is somewhat speculative. It is not based on any radiological film or neurological study. The only "hard" evidence in the record – the CT scans taken of Plaintiff's head after his accident – indicated Plaintiff had no acute injury and thus does not support the doctor's speculation. I therefore conclude that the findings of the Commissioner related to any alleged mental impairment are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Although there is evidence on the other side, there is evidence to support the Commissioner's findings. Therefore, the Commissioner's findings must be affirmed as to that issue. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner even if it finds the evidence preponderates against the Commissioner's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Crisp v. Secretary, Health and Human Services*, 790 F.2d 450 n. 4 (6th Cir. 1986).

However, in light of my recommendation of remand, Plaintiff will be free to present any available additional evidence of those mental conditions on remand.

<u>The Use of the Grids</u>

Next, in the third and fourth issues, Plaintiff objects to the ALJ's determination Plaintiff could perform a full range of sedentary work, arguing he substituted his own medical findings for those readily found in the medical record and further erred in finding him not disabled by application of the grids. Because I conclude the record shows uncontradicted evidence of

significant nonexertional limitations which would require the use of a VE, I agree with Plaintiff on this issue.

Non-exertional impairments include impairments that affect the mind, the ability to reach, handle, and use the fingers for fine activities, stooping, climbing, crawling or crouching. See 20 CFR § 404.1569 (a)(c) (1). The ALJ's written decision does not list or discuss any of the specific non-exertional limitations found by the physical therapist, Dr. Jayakody or Dr. Wilburn. On page 7 of the decision the ALJ addresses this issue:

> "I also note there is no significant evidence showing the claimant has any severe limitations as to the use of his hands at sedentary work, a fact demonstrated by the statement of the physical therapist, not withstanding allegations of diffuse right arm weakness which should not be affected by the light lifting required at sedentary work levels." (Tr. 18).

The ALJ found Plaintiff did not have any significant non-exertional limitations and relied completely upon Rule 204.00 of the Medical Vocational Guidelines ("the Grids") and 20 CFR part 404 subpart P, appendix 2 to determine that the claimant was not disabled (Tr. 19). For reasons that follow, I conclude there is not substantial evidence to support this conclusion.

Reliance upon the Medical Vocational Guidelines requires reliable evidence that the claimant's non-exertional limitations do not significantly limit the range of work permitted by his exertional limitations. *See Shelman v. Heckler*, 821 F. 2d 316, 321 (6th Cir. 1987). The Sixth Circuit has held when a claimant has both exertional and significant non-exertional limitations, the medical vocational guidelines of Appendix 2 of 20 CFR part 404, subpart P are not fully applicable. *See Damron v. Secretary of Health and Human Services*, 778 F. 2d, 279, 282 (6th

Cir. 1985). Also significant to the determination of this case is Social Security ruling 83-12, in which the Secretary explains "most unskilled sedentary jobs require good use of both hands." (See also SSR 83-10 defining sedentary work and the repetitive use of hands and fingers, stating most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions). Here, the Record contains substantial evidence addressing nonexertional manipulative impairments involving Plaintiff's difficulties with reaching, handling and fingering.

In the orthopedic consultative examination report of Dr. Wilburn, an opinion given "great weight" by the ALJ (Tr. 17), Dr. Wilburn opines in his assessment, entitled "ability to do work related activities," that on a regular and continued basis the Plaintiff is limited in performing work activities of reaching, handling, fingering, feeling, pushing/pulling from very little to one-third of the time with either his right or left hand (Tr. 187). The Commissioner argues Dr. Wilburn "found Plaintiff capable of sufficient fine motor control so as to be able to sort, handle, and use paper/files." (Defendant's Brief at 17). However, nowhere in Dr. Wilburn's report and assessment does he specifically address and quantify "fine motor skills." It appears the Commissioner extrapolates fine motor skills from the assessment by Dr. Wilburn that Plaintiff can sort, handle and use paper files (Tr. 190). This fails to address Dr. Wilburn's finding that any work-related activities performed by the Plaintiff with his right or left hand involving reaching, handling, fingering, feeling, pushing/pulling could only be performed from very little to one-third of the time. I conclude such findings by the orthopedic consultative examiner constitutes substantial evidence establishing Plaintiff's significant difficulties with manipulative impairments involving limitations of reaching, handling, and fingering. Further, Dr. Douglas

Wilburn indicates via his narrative report and attached "ability to do work related activities" assessment that Plaintiff suffers from grip strength weakness in his right dominant hand (Tr. 178, 187). The Defendant is correct in pointing out in its brief that Plaintiff is restricted from any overhead reaching on the right side and is limited to occasional overhead reaching on the left side (Tr. 187). However, manipulative impairments of gripping, handling, fingering, and feeling are of more concern in relation to sedentary work.

The physical exam findings of Dr. Jayakody also noted Plaintiff had limitations with his ability to grip with the right hand and was unable to straighten his elbow or raise his arm above sixty degrees (Tr. 173). In his opinion, the ALJ refers to the finding of Dr. Jayakody noting cervical and lumbar tenderness, a "poor grip" with the right hand, and tenderness of the left ankle and foot causing difficulty ambulating, and poor memory, without formal assessment (Tr. 15).

A physical therapy evaluation contained in the Record also provides evidence Plaintiff has decreased grip in the right hand and the inability to extend the elbow (Tr. 168-169).

The Commissioner, at page 17 of his brief, contends "Plaintiff's arguments suggest a lack of appreciation for just how restrictive a limitation to sedentary work is." However, I agree with Plaintiff that this analysis is better left to a reliable vocational expert when the record contains substantial evidence establishing significant restrictions in manual dexterity. I do not find other medical records supporting a contrary finding. Both of the evaluating physicians and a physical therapy evaluation all appear to show these restrictions, but the ALJ finds "there is no significant evidence showing the claimant has any severe limitations as to the use of his hands at sedentary work." Looking at the record as a whole, I disagree. Essentially the ALJ bases his rejection of

these findings on the absence of other medical evidence not because of contrary medical evidence.

Plaintiff points to an 11th Circuit opinion which has held that limitations in manual dexterity and grip strength in one hand would significantly limit a person's ability to adapt to other work and should therefore preclude an ALJ's exclusive reliance on the grids. *Patterson vs. Bowen*, 799 F.2d 1455, 1459 (11th Cir. 1986). Furthermore, Courts have held the regulations accompanying the grids state that bilateral manual dexterity is a necessary element in the performance of the full range of sedentary work. *See Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995). The 6th Circuit adopts similar rules. In certain circumstances, the Commissioner may rely on the grids found at 20 C.F.R. Pt. 404. Subpt. P. App 2, to show that there is work that the plaintiff can perform in the general economy. 20 C.F.R. § 416.969. However, the grid rules consider only the exertional or strength limitations and generally cannot be applied in the presence of significant non-exertional limitations, or environmental limitations. *Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990), *see also* 20 C.F.R. § 416.99a(c)(2). The "grids" cannot be applied in the presence of non-exertional limitations unless there is reliable evidence that the non-exertional limitation would not significantly affect the ability to perform work at a designated exertional level. *Shelman v. Heckler*, 821 F.2d 316, 321-322 (6th Cir. 1987). Most courts do not permit the use of the grid to direct a finding if non-exertional impairments prevent the performance of a wide or full range of work at the designated level of RFC. *Nelson v. Secretary of HHS*, 770 F.2d 682, 685 (7th Cir. 1985) ("The fact that a claimant suffers from a non-exertional impairment does not . . . immediately preclude utilization of the grid. 'Before reaching the conclusion that the grid will not be applied because [the] claimant alleges non-

exertional limitations, those non-exertional limitations must be severe enough to restrict a full range of gainful employment at the designated level'") (quoting *Kirk*, 667 F.2d 524, 537).

In this case the Commissioner can rely on the grids only if nonexertional limitations do not significantly limit the range of sedentary work. *See Buress v. Secretary of Health and Humans Services*, 835 F.2d 139, 142 (6th Cir. 1987). ("The Secretary may meet his burden [at step five] by reference to the [grid] unless the claimant suffers from some nonexertional limitations that significantly limit the range of work permitted by his exertional limitations.") *See also, Kimbrough v. Secretary of Health and Human Services*, 801 F.2d 794 at 796, 797 (holding that it was not erroneous to use the grids if plaintiff's nonexertional impairments did not significantly limit his ability to do a full range of work at a designated level). The ALJ made that finding but I conclude it is not supported by the record.

Dr. Wilburn's findings limiting the claimant to occasional use of hands with decreased grip strength in the right hand, objective weakness of the right arm, would by its very nature create an issue as to whether the claimant retains an RFC for less than the full range of sedentary work contrary to the finding of the ALJ.[2]  Based on the opinions from several sources that Plaintiff does indeed have limitations of grip in his right dominant hand and other nonexertional limitations, I conclude a vocational expert is necessary to address whether or not a full range of sedentary work would require good grip strength, bimanual dexterity, and the ability to utilize the hands for more than just a third of the day.

---

[2] The ALJ on page 7 of his opinion when discussing the RFC of the claimant fails to mention Dr. Wilburn's clinical finding of a limitation in the claimant's use of both hands from very little to one-third of the time in a work setting. (TR. 18).

For these reasons, this case must be remanded so the ALJ can review additional evidence concerning those limitations and obtain suitable vocational expert testimony to determine if this plaintiff has the residual functional capacity for substantial gainful activity at the sedentary level, taking into account all nonexertional impairments which the ALJ finds to be significant. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). Without the presence of expert testimony from a vocational expert, I cannot find that the decision of the ALJ is supported by substantial evidence. For this reason, remand is recommended.

<u>Conclusion</u>

For the reasons stated herein, I RECOMMEND the Commissioner's motion for summary judgment (Doc. 12) be DENIED, that plaintiff's motion for summary judgment (Doc. 9) be GRANTED, and that this matter be REMANDED for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).[3]  The record should be further developed, if possible, to determine the extent of nonexertional limitations assessed by the physical therapist, Dr. Jayakody, and Dr. Wilburn, and to obtain further testimony from a VE to provide evidence on which to base the assessment of whether there are jobs in the national economy which Plaintiff can perform in light of his non-exertional impairments.  At that hearing, Plaintiff can present any additional evidence bearing on the severity of his limitations.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 4235, 106 S.Ct. 466(1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).